**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THREE APPLE ICLOUD ACCOUNTS** | **Case No. 25-** mj-126-01/03-TSM |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tarah E. Little being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple" or "PROVIDER"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of that attachment.

2.      I have been employed as an FBI Special Agent since 2015, and am currently

assigned to the Boston Field Office, Bedford Resident Agency. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 2252(a)(4)(B) related to the possession of child pornography in the District of New Hampshire and 18 USC § 2251(a) related to the production of child pornography in the District of New Hampshire. I have investigated federal criminal violations related to high technology or cyber-crime, child exploitation, and child pornography. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

## STATUTORY AUTHORITY

4.      This investigation concerns alleged violations of 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2251(a) related to the possession and production of child pornography in the District of New Hampshire (the "Target Offenses").  18 U.S.C. § 2252(a)(4)(B) makes it a crime for any person to knowingly possess one or more images depicting a minor under the age of 18 engaged in sexually explicit conduct.  18 U.S.C. § 2251(a) makes it a crime for any person to entice a minor to engage in sexually explicit activity for the purpose of producing any visual depiction.

## BACKGROUND TO THE INVESTIGATION

5.      On October 29, 2024, Sanbornton, New Hampshire Police Department received a

report of an adult victim ("VICTIM 1") who claimed to have been drugged and sexually assaulted by Connor Smith, date of birth ███/1994 ("SMITH").

6.      At the hospital, VICTIM 1 told officers that he had become aware of the sexual assault that morning when one of his friends stated they received a sexually explicit video of him and SMITH from SMITH's phone. VICTIM 1 then said he checked SMITH's phone and went through the pictures and videos on it. VICTIM 1 knew the passcode to SMITH's phone because he used the phone in the past to contact his probation officer.

7.      VICTIM 1 told officers that he had used his own phone to record videos and pictures that were on SMITH's phone. VICTIM 1 proceeded to show officers the recordings from his phone that he said were of SMITH's phone as it played videos and displayed pictures. In one video, officers observed VICTIM 1 laying on a bed and incapacitated. SMITH then is seen inserting his penis into VICTIM 1's anus. Another video shown to police appeared to show an adult male inserting his penis into the anus of a young boy, approximately six years old. VICTIM 1 also showed police videos of two young boys, approximately six years old, performing oral sex on an adult male.

8.      VICTIM 1 also showed police videos of a young person, approximately 15 years old ("VICTIM 2"), masturbating in front of what appeared to be hidden cameras. VICTIM 1 identified the person depicted in these videos to be VICTIM 2. VICTIM 2 is a 16-year-old child who previously resided with SMITH in Boscawen, New Hampshire. I have learned that SMITH had previously been arrested for sexually assaulting VICTIM 2 and has since been indicted on that charge. That charge remains pending in Merrimack County Superior Court. VICTIM 1 showed police other photographs of teenage boys with their penises displayed.

9.      VICTIM 1 stated that the videos and pictures shown to police, as described above,

were located on SMITH's phone. VICTIM 1 further stated that photos and videos depicting children engaged in sexually explicit conduct were located on SMITH's phone and SMITH's iPad. VICTIM 1 informed police that he was able to send himself access codes/links to access SMITH's devices.

10.     At the time of this incident, SMITH was residing at 121 Baptist Road, Canterbury, New Hampshire.

11.     Based in part on this information, on October 30, 2024, police obtained a search warrant for the residence at 121 Baptist Road. Seized during the search of the residence was an Apple iPad bearing serial number KPW7TWQ6DT.

12.     That same day, SMITH was stopped by law enforcement in Hillsborough County, New Hampshire, and was taken into custody on a state arrest warrant. At the time of the stop, SMITH was driving a 2018 Blue Tesla sedan. While speaking with law enforcement, SMITH asked to retrieve his cell phone from the vehicle he had been driving. Officers observed a cell phone on the front passenger seat of the vehicle. They then obtained a state warrant to search the vehicle for SMITH's phone and seized the cell phone on the passenger seat. That cell phone was a black Apple iPhone 15 Plus IMEI 350686385349198.

13.     The iPad and the iPhone were transported to the Canterbury Police Department, 26 Baptist Rd, Canterbury, NH 03224. The contents of the devices were extracted pursuant to the State search warrant and forensic images of the devices were made. The devices were stored in the Canterbury Police Department Evidence Room. The extractions were stored at the Merrimack County Sheriff's Office.

14.     On June 10, 2025, this Court issued a search warrant for the Apple iPad bearing

serial number KPW7TWQ6DT and a forensic image of the iPad (*see* 25-mj-109-01-TSM). On June 23, 2025, this Court issued a search warrant for a black Apple iPhone 15 Plus IMEI 350686385349198 and a forensic image of the iPhone (*see* 25-mj-113-01-TSM). An analysis of both devices by law enforcement found the following email addresses associated with SMITH's iCloud accounts:

      i.  Smithconnor191@gmail.com

     ii.  Connorjs941@gmail.com

   iii.  Smithconnor94@icloud.com

Hereinafter referred to as the "target accounts".

15.     During review of the iPhone, the affiant located four videos of a known minor male victim approximately six to eight years old at the time ("VICTIM 3") engaging in sexually explicit conduct with an unknown adult male.

16.     The videos are one-minute, fifty-two seconds, thirty-eight seconds and twenty-four seconds in length. In each video VICTIM 3 is touching and grabbing an erect adult male's penis.

17.     SMITH was employed by Spaulding Academy and Family Services ("Spaulding") from 2019 until 2023 as a residential advisor.

18.     Victim 3 attended Spaulding from 2021 until 2023 and lived their year-round as part of their residential program. VICTIM 3 resided in room 201 at the Young House building.

19.     In multiple of the four videos referenced in Paragraphs 15 and 16, a white door with the number "201" is visible.

20.     On October 23, 2023 the following text messages on SMITH's iPhone between SMITH and another individual listed as Bailey Barnes stated:

**SMITH**: I'm already at YH lol

**BARNES:** Gay lol well if you wanna swap half way I'll take [name redacted] today

**SMITH:** Well I have [VICTIM 3] lol it's ok just take today to clear your head!

21. Based on the context of the above communication, I believe "YH" to be an abbreviation for Young House.

22. The adult male's face is never shown in the videos, but there are identifiable moles and a tattoo that are visible.

23. I have seen previous images of SMITH, including photographs of him disrobed, and based on similar moles and a tattoo I believe SMITH is the adult male whose lower body appears in those four videos.

24. Based on investigation since the execution of the search warrant on October 30, 2024, law enforcement has learned information indicating that VICTIM 1 may have been in a consensual sexual relationship with SMITH prior to the time he reported that he had been assaulted by SMITH. Specifically, law enforcement has viewed videos of VICTIM 1 and SMITH engaged in what appears to be consensual sexual conduct with one another. Additionally, I reviewed VICTIM 1's criminal record and learned that he has numerous arrests and has convictions for criminal threatening (felony), criminal threatening (misdemeanor), simple assault domestic violence (misdemeanor), two controlled drug offenses (misdemeanor), driving while intoxicated (misdemeanor), and disorderly conduct (misdemeanor). None of these convictions are for crimes of dishonesty. Despite this information, I believe the videos and information provided by VICTIM 1 to police regarding the presence of CSAM, including sexually explicit videos of VICTIM 2 which appeared to have been created using hidden

cameras, on SMITH's phone and iPad to be reliable evidence of the crimes under investigation in this warrant.

25.     Based on the information contained in this affidavit, I submit that probable cause exists to believe that evidence of violations of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct) and 18 USC § 2251(a) (production of child sexual abuse materials) are present on the target accounts.

## BACKGROUND CONCERNING APPLE[1]

26.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

27.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.     iMessage and FaceTime allow users of Apple devices to communicate in real-

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My allows owners of Apple devices to remotely identify and track the

8

location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

28. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

29.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

30.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

31.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is

linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain

records of other device identifiers, including the Media Access Control address ("MAC

address"), the unique device identifier ("UDID"), and the serial number.  In addition,

information about a user's computer is captured when iTunes is used on that computer to play

content associated with an Apple ID, and information about a user's web browser may be

captured when used to access services through icloud.com and apple.com.  Apple also retains

records related to communications between users and Apple customer service, including

communications regarding a particular Apple device or service, and the repair history for a

device.

32.    Apple provides users with five gigabytes of free electronic space on iCloud, and

users can purchase additional storage space.  That storage space, located on servers controlled by

Apple, may contain data associated with the use of iCloud-connected services, including: email

(iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo

Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and

web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).

iCloud can also be used to store iOS device backups, which can contain a user's photos and

videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service

("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders,

notes, app data and settings, Apple Watch backups, and other data.  Some of this data is stored

on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple.  Records

and data associated with third-party apps, including the instant messaging service Kik, may also

be stored on iCloud.

33.    The stored communications and files connected to an Apple ID may provide

direct evidence of the offenses under investigation. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

34.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services that may constitute evidence of the crimes under investigation.

## CONCLUSION

35.     Based on the facts set forth above, there is probable cause to believe that Smith has committed violations of possession and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2251(a) and there may be evidence of those crimes within his iCloud account. Accordingly, I respectfully request that this Court grant the attached application for a search warrant.

36.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night

Respectfully submitted,

s/Tarah E. Little
Tarah E. Little
Special Agent

12

Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July __17__ 2025.

HON. TALESHA L. SAINT-MARC
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Apple accounts associated with smithconnor191@yahoo.com, connorjs941@gmail.com, smithconnor94@icloud.com (the "target accounts") and  as well as information preserved from the accounts pursuant to a request made under 18 U.S.C. § 2703(f) (see ref. # 202501149533), which is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company that is headquartered at / accepts service of legal process at One Apple Park Way, Cupertino, CA.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.   Information to be disclosed by Apple Inc. ("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, PROVIDER is required to disclose the following information to the government corresponding to each account or identifier (the "Account") listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

    c.   The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all images, videos, device settings, and bookmarks;

    d.   All records and information regarding locations where the account or devices associated with the account were accessed from June 1, 2021 – present, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

    e.   All records pertaining to the types of service used;

    f.   All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

    g.   All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txtfiles).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, instrumentalities, and information relating to violations of 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2251(a), as described in the affidavit submitted in support of this warrant, including, for the accounts described in Attachment A, including information pertaining to the following matters:

    A.  The sexual abuse or exploitation of any child;

B.   The possession, distribution, receipt, or transportation of child pornography,

C.   The identity of persons who either (i) used or controlled the target accounts; (ii) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the Target Offenses; or (iii) communicated with the account about matters relating to the Target Offenses. Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

a.   All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the accounts, accounts status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.   All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MCA") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI") and International Mobile Station Equipment Identities ("IMEI");

c.   All files and other records backed up to the iCloud related to iCloud Photo Sharing,

3

My Photo Stream, iCloud Photo Library, iCloud Drive, images, videos and bookmarks.

### III. Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

4